(69 App. Div. 10.)

NORTON et al. v. NEW AMSTERDAM GAS CO.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

MUNICIPAL CORPORATIONS—EXCAVATIONS IN STREETS—PERMITS.

> City Charter New York, § 524, provides that the commissioner of highways shall have control of paving and repaving and of the relaying of pavements removed for any cause. Section 525 declares that no removal of the pavement shall be permitted until a permit is first had from the department of highways. Plaintiff contracted to lay gas mains for defendant in certain streets, the contract obligating defendant to procure the necessary permits. *Held*, that a new permit was necessary for the reopening of the streets for the purpose of repaving after the mains had been laid and the trenches filled and temporary paving done, though the permit originally obtained provided that the pavement should be immediately replaced and kept in order for two years, and that such permit must be obtained by defendant under its contract.

Appeal from trial term, New York county.

Action by William F. Norton and another against the New Amsterdam Gas Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

J. C. Tomlinson, for appellant.
L. L. Kellogg, for respondents.

VAN BRUNT, P. J. The facts, so far as relevant to the only question raised upon this appeal, seem to be as follows: On the 19th of September, 1898, the plaintiffs, under the firm name of Norton & Dalton, entered into a contract with the defendant, which provided that the plaintiffs should furnish the materials and tools and execute the labor necessary for the laying of certain gas mains of the defendant in certain streets of the city of New York. The work to be done by the plaintiffs included the digging of the necessary trenches, the laying of the mains, the refilling of the trenches, and the repaving of the streets. The payments were to be made on each alternate Thursday after the date of the first payment, which was agreed to be made on the second Thursday after the commencement of the work under the contract. These payments were to be based upon the estimates made by the engineer, and to be for work completed up to the point where the pipe was laid and the trench refilled and paved and the street cleaned. It appears that after the making of the contract the plaintiffs entered into the

performance thereof, and at the time of the suspension of the work, as hereinafter mentioned, there was a quantity of repaving which remained to be done, where pipes had been laid and the trench refilled and temporary paving done. The plaintiffs began work on the contract sometime in October, 1898, and ceased to work about the 23d or 24th of January, 1899. On the 25th of January, 1899, an estimate was given to the plaintiff showing that up to that date work had been done by them amounting, at contract prices, to $21,627.20, of which there had been paid $17,672.94, leaving a balance unpaid of $3,954.20. The plaintiffs demanded payment of this sum, which the defendant refused, unless the plaintiffs would give a bond in the sum of $10,000 to do the repaving, which had not been done, and which the plaintiffs were required to do according to their contract. The plaintiffs refused to comply with this request, but stated that they would do the paving upon the defendant procuring a permit therefor. No permit being furnished, the plaintiffs did no more work, and brought this action to recover the damages alleged to have been sustained by the breach of the contract upon the part of the defendant.

No controversy is presented by this record as to the amount of the recovery, the only question being as to whether the defendant was under obligation to furnish to the plaintiffs a permit from the department of highways for the opening of the streets for the purpose of repaving, which the plaintiffs, under their contract with the defendant, had agreed to do. There is, however, a question raised in respect to the form of the pleadings. It is claimed upon the part of the defendant that the plaintiffs sued as for an amount due under the contract, and seek to recover as for a breach of the contract. But an examination of the complaint seems to us not to sustain this contention. The plaintiffs by their complaint substantially intended to allege that they had performed all the conditions precedent required by the contract up to the time when they ceased to work, but that they were prevented by the action of the defendant from the completion of the work, and hence, as the contract was broken by the defendant, they were entitled to recover their damages.

The evidence shows that on the 18th of January, 1899, the defendant sent a letter to the plaintiffs, stating that it was in receipt of a notice dated January 13th, from the department of highways, requesting it to send to such department an order to repave the openings in question. In that letter they stated, "As you are under contract with the New Amsterdam Gas Company to restore such pavement, we request that you commence this work at once." On the 26th of January, 1899, the plaintiffs wrote to the defendant stating that they were ready and willing, as they always had been, to relay the pavement over the openings under their contract, and at the price named therein, but that for some reason, unknown to them, the department of highways were preventing them from doing so. They then asked the defendant to arrange the matter with the department, and procure the necessary permit, as required by

the contract. This permit was never furnished or procured by the defendant, and, as has already been stated, the question is whether it was the duty of the defendant to furnish the same.

It was claimed upon the part of the defendant that no permit was required for the reopening of the street for the purpose of repaving, as an obligation to repave was contained in the permit which was first obtained from the department of highways for the opening of the street at the commencement of the work. Upon an examination of the provisions of the charter of the city, it seems to us that the question of the repaving of the streets is under the cognizance and control of the department of highways, and that it was the duty of the defendant to do all that was necessary, preliminary to the right of the plaintiffs to begin their work, as it seems to concede, and as appears to be assumed by the clause of the contract, which provides as follows:

"It is a condition precedent to this contract that the department of highways shall issue to the gas company all the necessary permits for opening the streets. Should the department of public works delay or decline to issue such permits, the gas company shall not be considered in default under this specification."

If, for the reopening of the street for the purpose of relaying the pavement, a permit was necessary, it seems to have been the duty of the defendant to procure the same, precisely as it was its duty to obtain the first permit when the streets were originally opened. Section 524 of the charter provides that the commissioner of highways shall have cognizance and control of paving, repaving, resurfacing, and the repairing of all streets, and of the relaying of all pavements removed for any cause. Section 525 provides that "no removal of the pavement or disturbance of the surface of any. streets * * * for any purpose whatever, shall be made until a permit is first had from the department of highways." It seems to be clear that, in order to entitle these plaintiffs to relay the pavement upon that part of the street upon which the pavement had been temporarily laid and was in use, a permit from the department of highways was necessary before the reopening of the street. It is true that under the permits first obtained by the defendant there is a provision that the trench, after the pipe is laid, shall be filled with clean earth, well rammed down as put in, and the pavement immediately replaced and kept in order for the space of two years after said pipe is laid. But this in no way conflicts with the provisions of section 525 of the charter, above referred to. The mere fact that the defendant was under an obligation to the city to keep this street in repair did not authorize it or its contractor to reopen a street, even for the purpose of repairing, without first obtaining the permit which the law provided for by section 524 of the charter.

We think, therefore, that the defendant was at fault in not procuring a permit for the reopening of the street, and, such being the case, the judgment appealed from must be affirmed, with costs. All concur.